UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BHIM RAMROOP, § | |
| § | |
|     Plaintiff, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. H-05-1681 |
| COOPER CAMERON CORPORATION § | |
| and § | |
| FRED HOLLAND, § | |
| § | |
|     Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court in this employment discrimination case are Defendants' motions for summary judgment. After considering the parties' filings and the applicable law, the Court finds that Cooper's motion, Docket No. 18, should be and hereby is **GRANTED**, and Plaintiff's claims against Cooper **DISMISSED WITH PREJUDICE**. Because Plaintiff's only claim against Holland is a state tort claim, the Court finds that that claim should be and hereby is **DISMISSED WITHOUT PREJUDICE**, and Holland's motion, Docket No. 21, **DENIED AS MOOT**.

### I.    BACKGROUND

Defendant Cooper Cameron Corporation ("Cooper"), a Delaware corporation with its principal place of business in Houston, Texas, is a manufacturer of power and compression equipment and a provider of services to the oil and gas industries. Plaintiff, who was born in Trinidad and is of Indian descent, was employed by Cooper as a machinist from 1997 until 2004. Defendant Fred Holland was the machine shop manager at the time of Plaintiff's employment at Cooper. Holland supervised Plaintiff's

1

immediate superior, production supervisor Wade Williams. The human resources manager at the time was Stacey Mills.

On July 27, 2004, Plaintiff was involved in an argument with a Caucasian coworker, David Bronikowski, over the disbursement of winnings from a lottery pool. Plaintiff admits that he used obscene language during the incident. (*See* Holland's Mot. for Summ. J., App. Tab 3, at 100 (Ramroop Dep. at 138), lines 10-11 ("He cussed me, and I cussed him back.").) According to Plaintiff, Bronikowski instigated the argument. (*See id.*, App. Tab 3, at 101 (Dep. at 145), lines 18-20, 108 (Dep. at 171), line 24.)

On August 2, 2004, Williams issued written warnings to both Plaintiff and Bronikowski. The warning to Plaintiff stated that:

> This kind of conduct is unacceptable at Cooper Compression. . . . In the past two years, I have spoken to you several times regarding your personal conduct. From this point forward, I expect you to conduct yourself in a professional manner while at work at Cooper Compression. If issues occur in the future that need to be addressed between you and another employee, I would recommend you[r] bringing this to my attention to address. If you fail to show immediate and sustained improvement in your personal conduct, further disciplinary action, up to and including termination of employment, could occur.

(*Id.*, App. Tab 2(A) (August 2, 2004 written warning issued to Plaintiff), at 1; *see also id.*, App. Tab 2(B) (August 2, 2004 written warning issued to Bronikowski), at 1.)

On December 2, 2004, Plaintiff engaged in an outburst during a machinists' meeting. After the machinists were informed that a rat had been seen in the machine shop, Plaintiff loudly made a remark, apparently in reference to his coworkers, about "four or five rats" that were "smelly and wearing blue jeans." (*Id.*, App. Tab 3, at 122-23 (Dep. at 229-33).) Again, Plaintiff claims that Bronikowski was the instigator. (*Id.*, App. Tab 3, at 123 (Dep. at 230-31).) Plaintiff was issued a second written warning, arising

from his conduct at the December 2nd meeting, on December 6, 2004. (*Id.*, App. Tab 2(C) (December 6, 2004 written warning), at 1.)

On December 29, 2004, Plaintiff left work early without obtaining permission to do so. (*Id.*, App. Tab 3, at 129 (Dep. at 255), lines 7-16.) The following day, Holland and Williams met with Plaintiff to administer an oral warning for the early departure. (*Id.*, App. Tab 3, at 129 (Dep. at 255), lines 17-24.) Defendants claim that Plaintiff became angry during the meeting, approached Holland in a physically threatening manner, and finally threw open the door, which nearly struck Holland in the face, and exited without permission. (Cooper's Mot. for Summ. J. at 4-5; Holland's Mot. for Summ. J. at 4-7.)

Plaintiff, on the other hand, contends that, as Plaintiff was leaving the meeting, Holland pressed the door against Plaintiff's chest, causing Plaintiff physical and mental pain. (Compl. at 7-8 ¶¶ 36-38.) Holland responds that he merely raised his hand to prevent the door from hitting him in the face, that he did not intend to strike Plaintiff with the door, and that he does not believe that Plaintiff was struck by the door. (Holland's Mot. for Summ. J. at 5-6.) Plaintiff did not seek medical treatment for any physical injury as a result of this incident. (Holland's Mot. for Summ. J., App. Tab 3, at 131 (Dep. at 263), lines 1-25.)

Plaintiff took a leave of absence under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.*, from January 10, 2005 to January 28, 2005. On January 31, 2005, he received a third written warning, which was based upon his conduct during the December 8, 2004 and December 30, 2004 meetings. The warning read as follows:

> Your interactions and behavior with other employees, including your supervisor and manager[,] continues [sic] to be [a] source of on-going problems which need to be corrected.  On two occasions, both 12/8/04 and 12/30/04, you met with me [Mills], your supervisor (Wade Williams), and your manager (Fred Holland) to address separate issues of your conduct.  During both of these sessions, you displayed aggressive behavior towards Fred Holland in both your tone and body language, raising your voice to him and mov[ing] aggressively and threateningly towards him.  It was brought to your attention that you need[ed] to calm down at that point.  This type of threatening behavior is inappropriate, disrespectful[,] and unprofessional and can not [sic] be tolerated in our place of business.  It is also consistent [with] and reflective of other situations and behaviors you have exhibited over the past months[,] which have been documented and discussed with you in previous conversations.  Going forward, you are being given notice that if these sorts of aggressive behavior take place again, towards any employee of Cooper Compression, it may lead to further disciplinary action up to and including termination of employment.

(*Id.*, App. Tab 2(D) (January 31, 2005 written warning), at 1.)

Plaintiff took another FMLA leave of absence from February 18, 2005 until March 28, 2005, returning to work on March 29, 2005.  On that day, Cooper employee Arthur Flores reported to Williams that he had seen Plaintiff lift Plaintiff's radio into the air, smash it to the ground, pick it up again, and throw it at a metal trash can from a distance of approximately ten feet, knocking the lid of the trash can to the floor.  (*Id.*, App. Tab 5, at 193 (Williams Aff. at 3) ¶ 7; Cooper's Mot. for Summ. J., App. Tab 10, at 227-28 (Flores Aff. at 1-2) ¶¶ 2-3.)  Williams reported the incident to Mills, who then conducted an investigation and procured written statements from Flores and from Sidney Poole and Donald Schram, two Cooper employees who heard but did not see the incident. (Holland's Mot. for Summ. J., App. Tab 2, at 41-42 (Mills Aff. at 5-6) ¶¶ 14-16.)  Mills then interviewed Plaintiff, who admitted throwing the radio onto the floor but claimed that he had thrown it toward the trash can from only one or two feet away.  (*Id.*, App. Tab

4

2, at 42-43 (Mills Aff. at 6-7) ¶ 17; *id.*, App. Tab 3, at 136-37 (Ramroop Aff. at 285-287).)

After interviewing Plaintiff, Mills suspended him with pay, pending completion of the investigation into the radio incident. (*See* Cooper's Mot. for Summ. J., App. Tab 1(I) (March 29, 2005 suspension notice), at 1.) On March 31, 2005, Mills and Williams terminated Plaintiff's employment, effective March 29, 2005. (Holland' Mot. for Summ. J., App. Tab 2, at 43-44 (Mills Aff. at 7-8) ¶¶ 19-20.) According to Mills, she alone made the decision to terminate Plaintiff. (*Id.*, App. Tab 2, at 43 (Mills Aff. at 7) ¶ 19.) Mills claims that she based her decision on Plaintiff's history of aggressive behavior. (*Id.*, App. Tab 2, at 43 (Mills Aff. at 7) ¶ 19.)

Plaintiff filed suit against Cooper and Holland in May 2005, stating claims against Cooper for retaliation under the FMLA, 29 U.S.C. § 2614(a)(1), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a); and against Holland for assault under Texas state tort law.[1] Defendants now move for summary judgment on each of Plaintiff's claims. The Court examines each claim in turn.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

---

[1] Plaintiff's Complaint also includes claims against Cooper for racial discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981; national origin discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1); and intentional infliction of emotional distress under Texas state tort law. Plaintiff has now abandoned those claims. (*See* Pl.'s Resp. to Cooper's Mot. for Summ. J. at 2.)

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id*.

### B.      Cooper's Motion to Dismiss

#### 1.      The FMLA claim.

"The FMLA prohibits employers from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under' the act." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (quoting the FMLA, 29 U.S.C. § 2615(a)(1)) (first alteration added; subsequent alterations in original). FMLA retaliation claims are evaluated using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Richardson*, 434 F.3d at 332-33.

> *McDonnell Douglas* instructs that the plaintiff must first establish a *prima facie* case of [retaliation]. . . . Once the plaintiff presents a *prima facie* case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action. . . . If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Frank v. Xerox Co.*, 347 F.3d 130, 137 (5th Cir. 2003). To make out a *prima facie* case of FMLA retaliation, an employee must show that "(1) [he] engaged in a protected

6

activity, (2) the employer discharged [him], and (3) there is a causal link between the protected activity and the discharge." *Id.* at 332.

Plaintiff claims that Cooper fired him in retaliation for his taking FMLA leave. He establishes a *prima facie* case by contending that (1) he took FMLA leave; (2) he was terminated; and (3) his taking FMLA leave was at least part of the reason for his termination. In response, Cooper argues that it terminated Plaintiff for a legitimate, non-discriminatory reason; namely, he had a continuing history of aggressive and threatening behavior at work. To demonstrate that this reason is merely a pretext, Plaintiff points to (1) the temporal proximity between his FMLA leave and his termination and (2) statements by Cooper officers that supposedly demonstrate those officers' desire to terminate employees who take FMLA leave.

First, Plaintiff notes that he was terminated on the same day on which he returned from his second FMLA leave of absence. While, as noted above, temporal proximity may suffice to satisfy the causation element of Plaintiff's *prima facie* case of FMLA retaliation, it cannot also suffice to rebut Cooper's legitimate, non-discriminatory reason. To hold otherwise would effectively eliminate the additional burden that the test imposes upon a plaintiff when a defendant proffers a legitimate rationale for an adverse employment action.

Plaintiff next attempts to carry that burden by arguing that the Cooper officers who made the termination decision were at least partially motivated by the desire to retaliate, as demonstrated by their statements regarding Cooper's attendance policy. This contention is based primarily upon misleading constructions and quotations out of context of the statements of various Cooper employees. First, Plaintiff notes that Mills

7

warned him, on December 30, 2004, that he was too often absent from his shift. The intended implication is, apparently, that these "excessive" absences were FMLA absences. The very evidence cited by Plaintiff in support of this inference demonstrates, however, that Mills was referring not to such absences but rather to Plaintiff's tendency to leave early without permission on days when he was not on FMLA leave:

> Q: What is Exhibit 5?
> A: It's a documented verbal warning that Bhim had received for leaving work early, before the end of his scheduled shift, and without notifying either his supervisor or manager.
> Q: Halfway down the first page of Exhibit 5, a sentence says, quote, "Bhim's record shows excessive marks of him [sic] leaving work before his scheduled shift is over," end quote. At the time that Exhibit 5 was written on December 30th, 2004, did you feel that Mr. Ramroop had excessive absences from his shift?
> A: Yes.
> Q: When Mr. Ramroop was absent from his shift on the occasions referred to in Exhibit 5, was he fulfilling the requirements of his job?
> A: I don't believe I can answer that question.
> Q: The last sentence on the first page of Exhibit 5 and continuing to the next page says, quote, "Keep in mind that if it is last minute notice, you're not fulfilling your obligation to your scheduled shift and are subject to further disciplinary action," end quote. If an employee is absent from his shift, do you feel that the employee is not fulfilling his obligation to a shift?
> A: Can you repeat that, please?
> Q: If an employee is absent from his shift, do you feel that the employee is not fulfilling his obligation to his shift?
> A: I would in general say yes, then.
> Q: What was Mr. Ramroop's obligation to his shift?
> A: To work the entire scheduled shift for that day including any scheduled overtime.

(Cooper's Mot. for Summ. J., App. at 277 (Mills Dep. at 18-19).)

Plaintiff nonetheless contends that Cooper's attendance policy mandates the progressive discipline of employees who take FMLA leave. The disingenuousness of this argument is conclusively demonstrated by Plaintiff's counsel's discovery tactics. First, when Plaintiff's counsel questioned both Holland and Mills, during their depositions,

about Cooper's attendance policy, he provided Holland and Mills with only the first page of the two-page policy. (*See* Holland's Mot. for Summ. J., App. Tab 1, at 10-12 (Holland Dep. at 8-10); *id.*, App. Tab 1, at 35 (Holland Dep. at 23); *id.*, App. Tab 8, at 206-07 (Mills Dep. at 13-18).) The second page of the policy clearly states that FMLA leave does not fall within the definition of "absence occurrences" warranting progressive discipline. (*See* Pl.'s Resp. to Cooper's Mot. For Summ. J., App., at 7 ("FMLA, Worker's Compensation, Paid Bereavement, Paid Civic Duty, Military, Company Business, Vacation, Personal Leave of Absence, Plant Closure or Lack of Work does not count toward absence occurrences.").)

Even if, despite this evidence of deliberate deception, the Court assumes that Plaintiff did not become aware of the FMLA exception before the Holland and Mills depositions – that is, that Plaintiff did not bother to read both pages of the policy – Holland alerted Plaintiff to the provision on December 15, 2005, when Holland corrected his deposition answers to include an accurate description of the policy. (*See* Holland's Mot. for Summ. J., App. Tab 1, at 35 (Holland Dep. at 23).) Plaintiff nonetheless continues to argue, in a document filed two months after Holland's corrections, that the policy mandates disciplinary action against employees who take FMLA leave. In support of his position, Plaintiff now contends that the "absence occurrences" from which FMLA leave is excepted are somehow different from the "absences" that warrant progressive discipline. (*See* Pl.'s Resp. to Cooper's Mot. for Summ. J. at 10.) This is, of course, a distinction without a difference, and Plaintiff's insistence otherwise serves only to damage his credibility and to call into question the integrity of his counsel.

Finally, Plaintiff notes Williams's statement that, during Plaintiff's FMLA leaves of absence, Cooper was less productive because fewer machinists were available. (*See id.*, App. at 143 (Williams Dep. at 23).) This self-evident fact cannot support a finding that Plaintiff's termination was motivated by a desire to retaliate. Were the Court to hold otherwise, the fact that an FMLA plaintiff made any contribution at all to the productivity of his employer would always justify a denial of summary judgment. Because, therefore, Plaintiff has failed to present any evidence to support his FMLA claim against Cooper,[2] Cooper's motion for summary judgment on that claim is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**.

### 2. The Title VII Claim

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). A plaintiff alleging unlawful retaliation under Title VII must claim "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). "In order to establish the causal link between the protected conduct and the illegal employment action as required by the *prima facie* case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's

---

[2] Plaintiff also argues that both the timing of Mills's statement that she was going to suspend Plaintiff and work toward his termination and Williams's admission that Williams himself had thrown a wrench several times many years earlier constitute evidence of pretext supporting Plaintiff's FMLA claim. Those statements do not, however, constitute "sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000).

protected activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). A plaintiff may establish causation by direct or circumstantial evidence. *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191-92 (5th Cir. 2001). Title VII retaliation claims, like FMLA retaliation claims, are subject to the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*, 411 U.S. at 802-04.

Plaintiff claims that his termination was motivated by Cooper's desire to retaliate against him for having filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). He makes a *prima facie* case of Title VII retaliation by alleging that (1) filed the EEOC charge, (2) he was terminated, and (3) his termination was caused by his filing the EEOC charge. Cooper responds by again citing its legitimate, non-discriminatory reason: Plaintiff's pattern of aggressive conduct.

To satisfy the burden thus imposed upon him, Plaintiff points out that Cooper terminated him within four months of his filing of the EEOC charge. (*See* Pl.'s Resp. to Cooper's Mot. for Summ. J. at 19.) It is true that the Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation," *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997), and that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes," *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (internal quotation marks omitted). As Cooper points out, however, the court has also held that, "once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*, the plaintiff must offer some evidence

11

from which the jury may infer that retaliation was the real motive." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis added).

Cooper's proffered reason for Plaintiff's termination explains its timing; Plaintiff was suspended on the day of the radio incident and terminated two days later, after an investigation was completed. The fact that the incident occurred a few months after Plaintiff filed his EEOC complaint is irrelevant in light of its much greater temporal proximity to Plaintiff's most recent misbehavior. Plaintiff also alleges that Holland assaulted him during the December 30, 2004 meeting, during which, as Plaintiff was storming out of the office, Holland allegedly pressed the office door against Plaintiff's chest. As Cooper points out, however, even were the Court to find that Holland had been among those who made the decision to terminate Plaintiff, Plaintiff offers no evidence supporting an inference that the door incident, and hence the firing, was related to Plaintiff's EEOC charge. Accordingly, because Plaintiff has failed to support his Title VII claim with sufficient evidence to withstand summary judgment, Cooper's motion is **GRANTED** as to that claim, which is **DISMISSED WITH PREJUDICE**.

### C. Holland's Motion to Dismiss

Plaintiff's only remaining claim against Holland is a state tort assault claim arising from the door incident. Because no federal claims remain before the Court, and because the Court declines to exercise supplemental jurisdiction to retain the state claim, *see* 28 U.S.C. § 1367(c)(3), that claim is hereby **DISMISSED WITHOUT PREJUDICE** and Holland's motion for summary judgment **DENIED AS MOOT**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 20th day of March, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**